(89 App. Div. 185.)

### PEOPLE v. MEYER.

(Supreme Court, Appellate Division, Second Department. December 30, 1903.)

1. OLEOMARGARINE—SALE—FEDERAL STATUTES—EFFECT ON STATE LAWS.

A federal statute providing for the taxation of persons engaged in the manufacture and sale of oleomargarine does not authorize such manufacture or sale in New York, where such sale is forbidden by Agricultural Law, Laws 1893, p. 663, c. 338, § 26.

2. SAME—STATUTES—VALIDITY.

Agricultural Law, Laws 1893, p. 663, c. 338, § 26, prohibits the manufacture and sale of imitation butter, and section 27 prohibits the coloring of butterine or oleomargarine, or any compound of the same, so as to cause such product to resemble butter, and prohibits the sale of such colored compound. *Held*, in an action to recover a penalty for violation of such act, where it was shown that defendant sold oleomargarine which was colored to represent butter, the fact that defendant disclosed to his customers that the substance was oleomargarine and not butter did not relieve him from liability on the ground that the statute, in so far as it prohibited the sale of oleomargarine as such, was unconstitutional.

Appeal from Municipal Court, Borough of Brooklyn, Third District.

Action by the people against Henry F. Meyer to recover a penalty under Agricultural Law, §§ 26, 27 (Laws 1893, p. 663, c. 338, as amended by Laws 1892, p. 986, c. 385), for selling oleomargarine colored to represent butter. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before BARTLETT, JENKS, WOODWARD, HIRSCH-BERG, and HOOKER, JJ.

Maurice Meyer, for appellant.
Bernard J. York, for the People.

WILLARD BARTLETT, J. This is an action to recover a penalty for alleged violations of sections 26 and 27 of the Agricultural Law. Laws 1893, p. 663, c. 338. Section 26 prohibits the manufacture and sale of imitation butter, and section 27 prohibits the coloring of butterine or oleomargarine, or any compound of the same, so as to cause such product to resemble butter or cheese, and also prohibits the sale of such colored compound.

The evidence shows that the defendant sold imitation butter which was colored so as to resemble natural butter, the product of the

dairy. At the time of the sale he avowed that the substance sold
was butterine. In his answer, however, he alleges that it was oleo-
margarine, and the evidence shows such to have been the fact. There
was testimony given by a chemist employed to make analyses for the
agricultural department, which the court was entitled to believe, to
the effect that the natural color of the oleomargarine sold by the
defendant was white, and that it had been made yellow by the addition
of an aniline dye. The position of the appellant is that he was justi-
fied in selling oleomargarine by virtue of the acts of Congress of the
United States imposing an internal revenue tax upon that substance,
and also that the legislation of this state prohibiting the sale of im-
itation butter cannot constitutionally be made applicable to the sale
of oleomargarine, where the seller, at the time of the sale, states to
the purchaser the true character of the substance sold. There is
nothing in the first proposition. A federal statute providing for the
taxation of persons engaged in the manufacture or sale of oleomarga-
rine does not authorize such manufacture or sale in a state in which
either is lawfully forbidden. Plumley v. Massachusetts, 155 U. S. 461,
15 Sup. Ct. 154, 39 L. Ed. 223. As to the second proposition, that por-
tion of the agricultural law which is now attacked as unconstitutional
is the amendment of section 26 effected by chapter 385, p. 986, of the
Laws of 1902, which inserted into that section these words:

"Any person manufacturing, selling, offering, or exposing for sale any com-
modity or substance in imitation or semblance of butter, the product of the
dairy, shall be deemed guilty of a violation of the agricultural law, whether
he sells such commodity or substance as butter, oleomargarine, or under any
other name or designation whatsoever, and irrespective of any representations
he may make relative to such commodity or substance."

It is contended that this enactment is unconstitutional because it
assumes to forbid the sale of oleomargarine, a healthful product,
under its own name; and we are referred to the case of the People
v. Bremer, 69 App. Div. 14, 74 N. Y. Supp. 570, where section 26 of
the agricultural law, before the amendment, was under consideration,
and where Van Brunt, P. J., said:

"There is no prohibition against the manufacture of oleomargarine as such;
but when made to imitate natural butter, and sold as such, there is a violation
of the provision of this section of the agricultural law."

It seems to me that the amendment of 1902 is constitutional in its
application to the facts proved in the present case, whatever view we
might be required to take if it appeared that no change had been
made in the manufactured substance in order to create an appearance
resembling that of butter. Here we have distinct proof that coloring
matter had been added to the oleomargarine sold by the defendant,
which had effected a change in its appearance from a white hue to the
yellow or yellowish color of butter made from dairy products. The
substance sold therefor had been artificially made to resemble butter.
I think it is within the power of the Legislature to prohibit the sale
even of an artificial product the appearance of which has thus been
altered so as to make it look like another and wholly different sub-
stance, although the seller disclose its true character. One of the
evils to be guarded against, and which the Legislature may properly

guard against by laws of this character, is the deceptive palming off upon the public of one article for another (People v. Arensberg, 105 N. Y. 123, 11 N. E. 277, 59 Am. Rep. 483); and perhaps the only way to accomplish this result in the case of a substance artificially colored so as to resemble butter is to prohibit its sale, even under its true name.   Otherwise the person who purchases it from the manufacturer or dealer may subsequently use it for purposes of deception; as, for example, where a restaurant keeper buys oleomargarine thus colored from his grocer, and serves it to the patrons of his restaurant in the guise of genuine butter.

Another and different question would arise if it were sought to apply the amendment of 1902, above quoted, to a case where it appeared that oleomargarine actually looked just like dairy-made butter, without the addition of any ingredient to effect a change in its appearance.   It will be time enough to decide that question when it is presented.   Upon the facts of the case at bar I am of opinion that the disclosure of the name of the imitation butter sold by the defendant did not relieve him from the penalty prescribed by the agricultural law.

For these reasons, I think the judgment should be affirmed.

Judgment of the Municipal Court affirmed, with costs. All concur.